UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| JODY RENEE SHEVLIN, | ) | C/A No. 4:11-00551-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. Upon consent of the parties, this case was referred to the undersigned for the conduct of all further proceedings and the entry of judgment.

**<u>New Evidence</u>**

Plaintiff submitted new evidence along with her briefs for this court to consider. The evidence consists of several lay witness statements concerning Plaintiff's symptoms, general information about hypoglycemia, and a note written on a prescription sheet from Dr. Loraline Booze dated August 19, 2011, stating "Pt has reactive hypoglycemia with reported triggers of strong aromas including perfume, foods, and cleaning products." (Doc. #42-1, p. 3). Plaintiff also submitted

a copy of the office notes from Dr. James Hall dated October 10, 2011, which gives a history of her "...doing well in general except that she has the ususal hypoglycemic reactions." (Doc. 42-1, p. 8).

With regard to this evidence that was not before the ALJ or submitted to the Appeals Council for review, the court cannot consider the evidence. This court cannot consider evidence not contained in the record before the ALJ. See Bishop v. Barnhart, 78 Fed. Appx. 265, 268 (4th Cir. 2003) *citing* Huckabee v. Richardson, 468 F.2d 1380, 1381 (4th Cir. 1972)(holding that reviewing courts are restricted to the administrative record in determining whether the Commissioner's decision is supported by substantial evidence). Therefore, this court cannot review or consider the evidence submitted by Plaintiff with her briefs as they were not made a part of the administrative record.

To the extent Plaintiff is asserting that the case be remanded for consideration of this additional evidence, the argument fails. Sentence six of 42 U.S.C. § 405(g) authorizes the courts to remand cases for consideration of additional evidence where the evidence is new and material and good cause exists "for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). In Borders v. Heckler, 777 F.2d 954 (4th Cir.1985), *superseded by statute*, 42 U.S.C. § 405(g), as recognized in Wilkins v. Sec'y, Dept. of Health and Human Servs., 925 F.2d 769, 774 (4th Cir.1991),[1] the Fourth Circuit explained:

---

[1] Wilkins itself was vacated but other courts have continued to rely on Wilkins in acknowledging that the Borders four-part test still survives after amendment of Section 405. "Though the court in Wilkins indicated in a parenthetical that Borders' four-part test had been superseded by 42 U.S.C. § 405(g), the Fourth Circuit has continued to cite Borders as the authority on the requirements for new evidence when presented with a claim for remand based on new evidence, and the U.S. Supreme Court has not suggested that the Borders construction of § 405(g) is incorrect." Ashton v. Astrue, C.A. No. TMD 09-1107, 2010 WL 3199345, at *3 n. 4 (D.Md. Aug.12, 2010) (citing cases); Brooks v. Astrue, 2010 WL 5478648, at *8 & n. 4 (D.S.C. November 23, 2010)

> A case will be remanded to the Commissioner for consideration of newly discovered evidence where the following requirements are satisfied: (1) the evidence is relevant to the determination of disability at the time the application was first filed and not simply cumulative; 2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant has presented to the remanding court at least a general showing of the nature of the newly discovered evidence.

Id. at 955 (internal citations and quotations omitted).

In her reply brief, Plaintiff argues that she believes she has "good cause for my failure to incorporate new evidence." (Doc. #42, p. 3). Plaintiff asserts that she is "still working with and waiting for my Dr's to get records and review them to treat my 'ongoing medical care.' I signed and mailed new release forms the end of September" and asserts that her condition is relatively new and few doctors are aware of the "mechanisms of 'reactive hypoglycemia.'" (doc. #42). In her brief, Plaintiff continues to discuss her symptoms and conditions and the problems she has with smell intolerance and what the physicians have been recommending with regard to her condition.

However, Plaintiff has failed to meet the factors of the Borders test. There is no good cause shown for not submitting the statements from the lay witnesses to the ALJ or Appeals Council. Further, the medical note from Dr. Booze, Plaintiff's new physician, which states Plaintiff has reactive hypoglycemia, is dated August 9, 2011, over a year after the date of the ALJ's decision of January 22, 2010, and it does not state how long she has had the condition or that she is unable to work due to the condition.[2] As Plaintiff has failed to meet the Borders factors, any request for a sentence six

---

[2] Additionally, Drs. Morgan and Kwon both stated in their reports that Plaintiff has reactive hypoglycemia. (Tr. 456, 496). Therefore, this diagnosis was before the ALJ at the time of the hearing.

remand should be denied.

## PROCEDURAL HISTORY

The Plaintiff, Jody Renee Shelvin, filed her applications for DIB and SSI on December 26, 2007. Her applications were denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge (ALJ) on December 11, 2009. In a decision dated January 22, 2010, the ALJ found that Plaintiff was not under a disability. The Appeals Council's denial of Plaintiff's request for review of the ALJ's decision made it the Commissioner's final decision for purposes of judicial review. Plaintiff, *pro se*, filed her complaint on March 9, 2011, seeking judicial review of the Commissioner's decision.

## FACTUAL BACKGROUND

The Plaintiff was born on July 1, 1968, and was forty (40) years of age on the alleged onset date. She has at least a high school education and past work experience as a life guard, housekeeper, and receptionist. (Tr. 40).

## DISABILITY ANALYSIS

In her brief, Plaintiff attempts to submit new medical evidence and letters from friends for the court to review. She reiterates that she has "reactive hypoglycemia" and that smells cause her to faint. In her reply brief, Plaintiff argues that she meets the "5 steps" required to meet the disability requirements. Plaintiff asserts that she cannot perform other jobs because the only "smell-free" zone that she can create is in her home. (Docs. # 40 and #42).

In the decision of December 22, 2009, the ALJ found the following:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity since July 25, 2008, the alleged onset date (20 CFR 404.1571 *et. seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: hypoglycemia, syncope, and staring spells (20 CFR 404.1520(c) and 416.920(c)).

4. Claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, I find that claimant has the residual functional capacity to perform light work as defined in 404.1567(b) and 20 CFR 416.967(b) except that the claimant can only occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, crawl; never climb ladders/ropes/scaffolds; must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation; and avoid all exposure to hazards.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on July 1, 1968 and was 40 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determinations of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills ( See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience,

> and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from July 25, 2008, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 16-19).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial

gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the

burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## ANALYSIS

The undersigned has reviewed the medical records and finds many of the reports relevant to the issues in this case with regards to her hypoglycemia, syncope episodes, and staring spells by the Plaintiff. Plaintiff did not set out a summary of the medical records in her *pro se* brief. Therefore, the undisputed and relevant medical evidence as stated by the Defendant is set forth herein.

Plaintiff had a history of gastric bypass surgery and chronic anemia (Tr. 161, 711-16). She complained of various symptoms, including fatigue, dizzy spells, and fainting (syncope) (Tr. 163). Between March 2008 and June 2008, Plaintiff sought emergency room (ER) care on multiple occasions following syncope episodes (Tr. 190-237). In June 2008 and July 2008, Jeremy Parris, M.D., Plaintiff's treating physician, also examined Plaintiff on several occasions (Tr. 296, 299, 306, 309, 314, 321). Dr. Parris ordered a series of diagnostic tests which were unremarkable (Tr. 179-82, 187-89, 214-15, 303, 311-12, 461). Both Dr. Parris and the ER attending physicians attributed Plaintiff's syncope episodes to dehydration and/or eating (Tr. 206, 225, 305). The ER attending physicians instructed Plaintiff to increase her fluid intake (Tr. 192, 195, 199, 207), and follow a dietary regimen (Tr. 234-25). Both Dr. Parris and the ER attending physicians noted Plaintiff's noncompliance with treatment, including failure to follow her dietary recommendations (Tr. 195,

216, 220, 226, 234-35, 309). The ER attending physicians also noted that Plaintiff declined further evaluative measures, such as IV treatment, a blood transfusion, and a gastrointestinal (GI) evaluation (Tr. 192, 204, 217, 234, 236, 239).

In June 2008, Dr. Parris noted no one could determine the cause of Plaintiff's fainting spells ("which never involve any injury") (Tr. 314). Dr. Parris then referred Plaintiff to Harvinder Kohli, M.D., a neurologist (Tr. 284-87). Plaintiff told Dr. Kohli her syncope episodes were associated with eating (Tr. 284). Diagnostic tests and examination findings were normal (Tr. 284-86, 742-44, 755). Dr. Kohli concluded that Plaintiff's syncope episodes were not neurologically related, but was the result of dumping syndrome, possible hypoglycemia, and dehydration (Tr. 285, 461). In July 2008, Plaintiff continued to report that she was not following any dietary regimen (Tr. 430).

In September 2008, Jim Liao, M.D., a State agency physician, reviewed the record and assessed Plaintiff's ability to perform physical work-related activities (Tr. 446-53). Dr. Liao found that Plaintiff could perform work at the light exertional level with some postural and environmental limitations (Tr. 447-50).

In October 2008, Dr. Parris referred Plaintiff to Katherine Morgan, M.D., for a surgical intervention evaluation (Tr. 461-62, 486). Dr. Morgan noted Plaintiff's complaint that she was unable to work due to worsening syncope episodes following eating (Tr. 461). She also noted that Plaintiff underwent a "very thorough evaluation," including numerous diagnostic tests that revealed no abnormalities (Tr. 461). Based on her examination, Dr. Morgan concluded that Plaintiff's symptoms were more consistent with hypoglycemia or caused by hormones, not dumping syndrome (Tr. 462). Dr. Morgan referred Plaintiff to Soonho Kwon, M.D., an endocrinologist familiar with post-gastric bypass surgery disorders.

9

In mid-October 2008, Dr. Kwon diagnosed Plaintiff with reactive hypoglycemia related to her gastric bypass surgery (Tr. 456-57). Dr. Kwon placed Plaintiff on a low carbohydrate/high protein diet, and instructed her to monitor her blood sugar levels (Tr. 457). He also recommended more progressive treatment, if necessary, including medication and removal of her pancreas (pancreatectomy) (Tr. 457).

In November 2008, Plaintiff sought emergency room care after a syncope episode following eating (Tr. 739-41). Diagnostic and examination findings remained within normal limits (Tr. 739-40). The next day, Plaintiff returned to Dr. Morgan, who concurred with Dr. Kwon's treatment plan: a dietary regimen and, if necessary, surgical intervention (Tr. 496). Dr. Morgan noted that Plaintiff needed to make progress with treatment, "as she [was] unable to work currently" (Tr. 496).

In December 2008, Plaintiff told Dr. Kwon she was having difficulty following her dietary regimen and was told to "try harder" (Tr. 498, 500). Dr. Kwon referred Plaintiff to a nutritionist, and instructed her to return in six months for further evaluation (Tr. 500). Later that month, Jean Smolka, M.D., a State agency physician, reviewed the record and concurred with Dr. Liao's assessment that Plaintiff could perform work at the light exertional level (Tr. 501-08).

In January 2009, Plaintiff continued to receive nutritional guidance concerning the need to maintain an appropriate diet and avoid caffeine (Tr. 690). She also returned to Dr. Morgan (Tr. 688). Dr. Morgan noted that reports from cardiology, neurology, and endocrinology were all inconclusive concerning the source of her symptoms (Tr. 688). Dr. Morgan was "100% convinced that all of [Plaintiff's] symptoms" were related to hypoglycemia , but recommended re-evaluation before considering surgical intervention (Tr. 688). Later that month, Jeremy Soule, M.D., an endocrinologist, evaluated Plaintiff (Tr. 685-87). Dr. Soule noted food intake remained "poor,"

consisting mainly of small snacks and coffee (Tr. 686). After an examination, Dr. Soule concluded that although Plaintiff seemed to have "mild" hypoglycemia, her spells did not seem related to her sugar levels. Dr. Soule ordered further tests to rule out the possibility of dumping syndrome or hormonal-mediated spells (Tr. 686). In the interim, Dr. Soule instructed Plaintiff not to drive, ride, or operate machinery (Tr. 686).

In February 2009, Plaintiff was admitted to the hospital for a 72 hour fast (Tr. 639, 644, 652). Plaintiff was "uncooperative" and noncompliant with instructions. She complained of syncope episodes and staring spells, but each time a doctor was called to perform an examination her symptoms had resolved (Tr. 653). The fast was aborted (Tr. 653). Plaintiff refused further evaluative hospital treatment; instead opting for outpatient care. On discharge, her diagnosis was "questionable" syncopal episodes (Tr. 653).

In March 2009, Paul B. Pritchard, III, M.D., and Neil Maru, M.D., performed a neurological evaluation (Tr. 676, 681). Plaintiff reported her syncope episodes always occurred after eating, so she stopped eating during the day (Tr. 676). They noted that extensive diagnostic testing were unremarkable (Tr. 676, 681, 708-09). Plaintiff refused long-term brain activity (EEG) monitoring (Tr. 679). Plaintiff was instructed not to drive, and to return after outpatient EEG testing (Tr. 679, 681).

Sequential evaluation

First, the ALJ found that Plaintiff was not working and had not engaged in substantial gainful activity since July 25, 2008, her alleged onset date. At the second and third steps of the sequential

evaluation, the ALJ determined that the medical evidence indicates that Plaintiff has the severe impairments of hypoglycemia, syncope, and staring spells but does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.

Plaintiff does not appear to attempt to raise any issue with the ALJ's findings with regard to her impairments or that her impairments do not meet or equal a listing. Plaintiff seems to only argue that the ALJ erred in finding that she could perform other work in the economy because she asserts there are no jobs that are odor free.

The ALJ found that Plaintiff has the residual functional capacity to perform light work except that the claimant can only occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, crawl; never climb ladders/ropes/scaffolds; must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation; and avoid all exposure to hazards. Therefore, the ALJ determined that Plaintiff was not able to return to her past relevant work. Thus, the burden shifted to the Commissioner to show that other jobs exit in significant numbers in the national economy that Plaintiff can perform based on her residual functional capacity, age, education, and work experience. At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The purpose of bringing in a VE is to assist the ALJ in meeting this requirement. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (citation omitted). For a VE's opinion to be relevant, "it must be based upon a consideration of all other evidence in the record . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Johnson, 434 F.3d at 659 (quoting Walker, 889 F.2d at 50); see also English v. Shalala, 10 F.3d 1080, 1085 (4th Cir. 1993). An ALJ has discretion in framing

hypothetical questions as long as they are supported by substantial evidence in the record, but the VE's testimony cannot constitute substantial evidence in support of the Commissioner's decision if the hypothesis fails to conform to the facts. See Swaim v. Califano, 599 F.2d 1309, 1312 (4th Cir. 1979). Yet the hypothetical posed to the VE need only reflect those impairments supported by the record. See Hunt v. Massanari, 250 F.3d 622, 625 (8th Cir. 2001); Barnett v. Apfel, 231 F.3d 687, 690 (10th Cir. 2000); Cass v. Shalala, 8 F.3d 552, 556 (7th Cir. 1993).

In this case, the ALJ did not find the Plaintiff's statements, concerning the intensity, persistence and limiting effects of the symptoms to be fully credible to the extent they were inconsistent with his RFC assessment. (Tr. 17). The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 61 Fed. Reg. at 34486.

The ALJ concluded as follows:

> At the hearing, the claimant testified that she is hypoglycemic and experiences frequent weakness, dizziness, and fainting spells. She sometimes is unconscious for up to 2 hours following a fainting spell. The claimant reported experiencing these episodes 3-4 times per week. She currently is not working and lives with her 7 year old son. She gets some child support. In terms of activities of daily living, the claimant testified that she is unable to cook due to the smell of cooking and the affect it has on insulin production. She rarely drives a vehicle. She reported needing to lie down several times each day due to weakness and fatigue.
>
> After careful consideration of the evidence, I find that the claimant's medically

determinable impairments could reasonably be expected to cause the alleged symptoms, however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the above residual functional capacity assessment.

In terms of the claimant's alleged syncope, she has undergone an MRI of the brain, which was normal, and a transthoracic (ECHO) cardiogram, which was also normal. The claimant was seen by a neurologist, who did not feel that her fainting episodes are neurologically related. She had a normal EEG. The claimant was subsequently evaluated by endocrinologist Dr. Soonho Kwon, MD, [who] diagnosed the claimant with hyperinsulinemia hypoglycemia of a reactive type related to her previous gastric bypass surgery. Dr. Kwon and treating physician Dr. Katy Morgan, MD counseled the claimant to begin a high protein/low carbohydrate diet.

More recently, the claimant underwent an MRI in February 2009 which, again, was normal. In March 2009, Dr. Neal Maru, MD noted a thorough workup that included a normal routine EEG, normal echo, and a normal 30d heart monitor. Dr. Kwon subsequently urged the claimant to "try harder with the diet." Her dietician specifically ordered her to avoid caffeine. Nevertheless, it was noted that the claimant is dehydrated very often because she cannot drink water easily. Instead, she drinks significant amounts of tea and coffee with cream, even against the advice of her dietician. Several physicians have recommended long-term EEG monitoring, yet the claimant has declined.

As for the opinion evidence, Dr. Morgan, MD opined in November 2008 that the claimant was unable to work at the time as a result of her syncopal episodes. Dr. Morgan did not provide any indication as to the duration of the claimant's inability to work. Moreover, Dr. Morgan apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. Additionally, I note that such a determination regarding disability is an issue explicitly reserved to the Commissioner of the Social Security Administration. . . . Likewise, the opinion of Dr. Morgan has been accorded limited weight. Nevertheless, it has been considered.

The residual functional capacity conclusions reached by the physician employed by the state Disability Determination Services also found that the claimant was not disabled albeit using a different rationale. Although these physicians were non-examining, and therefore their opinions do not as a general matter deserve a much weight as those of examining or treating physicians, these opinions do deserve some weight as they are supported by the objective medical evidence of record.

Although the claimant's allegations of such significant limitations were not fully consistent with the medical evidence of record, I accorded the claimant the benefit of

the doubt and further reduced the residual functional capacity to include her limitations as described above. However, I cannot find the claimant's allegations that she is incapable of all work activity to be credible because of significant inconsistencies in the record as a whole.

(Tr. 17-18).

The undersigned concludes the ALJ conducted the proper credibility analysis and cited substantial evidence to support his finding that Plaintiff's subjective complaints were not entirely credible. After considering the record, the ALJ found Plaintiff has the RFC to perform light work with the limitations as set out above. The ALJ's RFC finding is supported by substantial evidence and complies with the Social Security Rules.

The record reflects that, in response to a hypothetical at the hearing which incorporated the limitations found by the ALJ to exist in this case, a vocational expert identified several jobs which Plaintiff could perform with her limitations. While Plaintiff may disagree with the findings of the ALJ, the undersigned has previously concluded that these findings are supported by substantial evidence in the record as that term is defined in the applicable case law. Hence, the hypothetical given by the ALJ to the vocational expert was proper, and the undersigned finds no grounds in the ALJ's treatment of the vocational expert's testimony for reversal of the final decision of the Commissioner. Lee v. Sullivan, 945 F.2d 687, 692 (4th Cir. 1991)(ALJ not required to include limitations or restrictions in his hypothetical question that he finds are not supported by the record).

## CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. Even where the

Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, 739 F.2d at 989. As previously discussed, despite the Plaintiff's claims, he has fails to show that the Commissioner's decision was not based on substantial evidence. Based upon the foregoing, this Court concludes that the ALJ's findings are supported by substantial evidence. Therefore, it is ORDERED that the Commissioner's decision be AFFIRMED.

    AND IT IS SO ORDERED.

                                                s/Thomas E. Rogers, III
                                                Thomas E. Rogers, III
                                                United States Magistrate Judge

July 13, 2012
Florence, South Carolina